R. CHRISTOPHER READE, ESQ.
Arizona Bar No. 026091
CORY READE DOWS AND SHAFER
1333 North Buffalo Drive, Suite 210
Las Vegas, Nevada 89128
Telephone: (702) 794-4411
Facsimile: (702) 794-4421
creade@crdslaw.com
(Admission/Pro Hac Vice Application Pending)
Attorneys for Creditor GRACE TAM and HALL TAM

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>ROBERT CLYDE PORTER II,<br><br>                Debtor.<br><br>HALL TAM; GRACE TAM,<br><br>                Plaintiffs,<br><br>   v.<br><br>ROBERT CLYDE PORTER II,<br><br>                Defendants. | Case No. : 3:24-bk-05790-DPC<br>Chapter 13<br><br><br><br>Adv. Case No. |

## COMPLAINT FOR NONDISCHARGEABILITY OF DEBTS PURSUANT TO 11 U.S.C. § 523

COMES NOW Plaintiffs HALL TAM and GRACE TAM, by and through their attorneys of record R. Christopher Reade, Esq. and hereby files their Complaint for Judgment to determine the nondischargeability of certain debts under 11 U.S.C. §523(a)(2)(A) and for their Complaint, Plaintiffs and each them allege as follows:

1. Plaintiff brings this action pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. §105(a). Plaintiff seeks an Order and Judgment by this Court that the debts owed by Defendants ROBERT CLYDE PORTER II to Plaintiffs HALL TAM and GRACE TAM are nondischargeable under 11 U.S.C. § 523(a)(2).

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334, insofar as it is a civil proceeding arising under the United States Bankruptcy Code.

3. Defendant ROBERT CLYDE PORTER II [hereinafter "ROBERT"] is upon information and belief an individual and is a resident of the State of Arizona who has availed himself of the jurisdiction of this Court.

4. Defendant ROBERT CLYDE PORTER II [hereinafter "ROBERT"] is upon information and belief the Debtor who has availed himself of the jurisdiction of this Court.

5. Plaintiff HALL TAM [hereinafter "HALL"] is an individual and is a resident of the State of New York.

6. Plaintiff GRACE TAM [hereinafter "GRACE"] is an individual and resident of the State of New York.

7. Venue lies in the District of Arizona pursuant to 28 U.S.C. §1409, as this is a proceeding under the United States Bankruptcy Code and/or arising in a case commenced and pending in the District of Arizona.

**GENERAL ALLEGATIONS**

8. Plaintiffs HALL TAM and GRACE TAM [hereinafter collectively referred to as "Plaintiffs TAM"] repeat and reallege each and every allegation set forth above, and incorporate the same by reference as though fully set forth herein.

9. In June 2005, Defendant ROBERT made a series of representations to Plaintiff HALL regarding the purchase of a residence located on Lot 3 of the Majestic Ridge Estates development in Clark County, Nevada, more specifically known as 841 Majestic Ridge Court, Henderson, Nevada 89052, also referred to as Clark County Assessor's Parcel No. 178-31-511-003 [hereinafter referred to as "Lot 3 Residence"].

10. These representations were made in order to induce Plaintiff HALL to enter into an

Agreement with Defendant ROBERT to purchase the Lot 3 Residence.

11. Defendant ROBERT made a series of false and fraudulent allegations to Plaintiff HALL regarding the quality of construction, the state of completion, the nature of the development, the history and experience of Defendant ROBERT and each of them and the nature of the transaction, *inter alia* that Defendant HALL would purchase the Lot 3 Residence upon the representation that Defendant ROBERT and each of them would guarantee and would leaseback the Lot 3 Residence at or above Defendant HALL's monthly mortgage.

12. In July 2005, Defendants ROBERT and CHERYL made a series of representations to Plaintiff HALL regarding the purchase of a residence for Lot 1 of the Majestic Ridge Estates development in Clark County, Nevada, more specifically known as 861 Majestic Ridge Court, Henderson, Nevada 89052, also referred to as Clark County Assessor's Parcel No. 178-31-511-001 in order to induce Plaintiff HALL to enter into an Agreement with Defendant ROBERT to purchase the Lot 1 Residence.

13. These representations were made in order to induce Plaintiffs TAM to enter into an Agreement with Defendant ROBERT to purchase the Lot 1 Residence.

14. Defendant ROBERT made a series of false and fraudulent allegations to Plaintiffs TAM regarding the quality of construction, the state of completion, the nature of the development, the history and experience of Defendant ROBERT and each of them and the nature of the transaction, *inter alia* that Defendant HALL would purchase the Lot 1 Residence upon the representation that Defendant ROBERT and each of them would guarantee and would leaseback the Lot 1 Residence at or above Defendant HALL's monthly mortgage.

15. That Defendant ROBERT made a series of representations to and entered into a series of Agreements with Plaintiff GRACE, by and through Plaintiff HALL, for the purchase of the Lot 1 Residence based upon the express representation that Defendant ROBERT would lease

back the Lot 1 Residence on the same terms and conditions as the Lot 3 residence.

16. That Defendant ROBERT, directly and indirectly, made a series of representations to Plaintiffs that the Lot 3 Residence was constructed completely and correctly and would be completed as part of the purchase of the Subject Residence and that Defendant ROBERT would execute all required contracts for a lease/option to purchase the Subject Residence back from Plaintiffs and would pay Plaintiffs the guaranteed return on investment.

17. That Defendant ROBERT, directly and indirectly, made a series of representations to Plaintiffs that the Lot 1 Residence was constructed completely and correctly and would be completed as part of the purchase of the Subject Residence, that Defendant ROBERT would execute all required contracts for a lease/option to purchase the Subject Residence back from Plaintiffs and that Defendants would receive a guaranteed pro forma return on their investment in excess of 10% per annum.

18. Defendant ROBERT had knowledge and understood that Plaintiffs are and were New York residents who were purchasing the Lot 3 Residence and Lot 1 Residence as a passive investment and solely upon the representation and agreement that Defendant ROBERT would immediately and concomitantly leaseback the Lot 3 Residence and Lot 1 Residence from Plaintiffs and that any breach of said Agreements would cripple Plaintiffs.

19. In reliance upon the Agreements and structure of the transaction concocted and represented by Defendant ROBERT, Defendant ROBERT set up a transactional scam whereby Plaintiffs would put down an Earnest Money Deposit for the Lot 3 Residence and would obtain a conventional loan at one hundred percent of the loan to value ratio for the Lot 3 Residence. Then at the close of escrow, upon Defendant ROBERT receiving all of the appraised value of the Lot 3 Residence, Defendant ROBERT would immediately refund the sum of One Hundred Fifty Thousand Dollars ($150,000.00) to Plaintiffs as an "Option Deposit" and would immediately enter

into a "Lease Purchase Agreement" for the Lot 3 Residence, under which Defendant ROBERT would "pay. . .per month to cover [Plaintiffs'] mortgage payment and all other costs of maintaining the house. [Plaintiffs] will not be out of pocket for any costs." This ploy is a loan scam whereby Defendant ROBERT would use Plaintiffs' own money to pay Plaintiffs back for their loan obligations.

20. Defendant ROBERT represented to Plaintiffs that Plaintiffs' monies were safe with Defendants and would be immediately returned to Plaintiffs.

21. In reliance upon the Agreements and structure of the transaction concocted and represented by Defendant ROBERT, Defendant ROBERT set up a transactional scam whereby Plaintiffs would put down an Earnest Money Deposit for the Lot 1 Residence and would obtain a conventional loan at one hundred percent of the loan to value ratio for the Lot 1 Residence. Then at the close of escrow, upon Defendant ROBERT receiving all of the appraised value of the Lot 1 Residence, Defendant ROBERT would immediately refund the sum of One Hundred Fifty Thousand Dollars ($150,000.00) to Plaintiffs as an "Option Deposit" and would immediately enter into a "Lease Purchase Agreement" for the Lot 1 Residence, under which Defendant ROBERT would "pay. . .per month to cover [Plaintiffs'] mortgage payment and all other costs of maintaining the house. [Plaintiffs] will not be out of pocket for any costs." This ploy is a loan scam whereby Defendant ROBERT would use Plaintiffs' own money to pay Plaintiffs back for their loan obligations.

22. Defendant ROBERT represented to Plaintiffs that Plaintiffs' monies were safe with Defendants and would be immediately returned to Plaintiffs.

23. As part of the purchase of Lot 3 Residence and Lot 1 Residence, Plaintiff HALL put down the earnest money for these transactions and the loans were taken out in the name of Plaintiff GRACE, giving both Plaintiffs a secured, vested, legal and equitable interest in the

Subject Residences.

24. As part of the Subject Purchase Agreements, Defendant ROBERT expressly required that Plaintiff put an additional $175,000 per home up at closing to pay for the completion of construction of the Lot 3 Residence and the Lot 1 Residence. Completion of construction was an express condition precedent and requirement for the purchase of the Subject Residences by Plaintiffs.

25. Defendant ROBERT represented that the $175,000 payments for each residence were monies which would be held safe, in trust and escrowed for immediate return to Plaintiffs upon successful close of escrow.

26. In reliance on their agreement and representations made by Defendants, Plaintiffs expended substantial sums for document preparation, financing, appraisal and filing regarding the Subject Properties and performance of the terms of the Purchase Agreement for the Subject Properties, not including the work and labor of Plaintiffs, their affiliated entities and agents for the Subject Properties.

27. Pursuant to the Agreement, Plaintiffs opened escrow for the completion of all of the Agreements.

28. In the course of the representations and correspondence, Defendant ROBERT made repeated representations to Plaintiffs that the "Lease Purchase Agreement" or "Lease/Option Agreement" would be executed at close of escrow.

29. Defendant ROBERT were aware that Plaintiffs are of Chinese descent and do not speak and read the English Language strongly and sought to prey upon such impediments.

30. Plaintiffs further spent substantial sums in reliance upon Plaintiffs' contracts, covenants and agreements to develop, improve and prepare the Subject Properties for completion and ownership subject to leasing back by Plaintiffs.

31. Plaintiffs completed their obligations and closed escrow on the Lot 3 Residence on or about October 18th, 2005 and closed escrow on Lot 3.

32. Defendant ROBERT represented that the Lot 3 agreement and refunds were in the mail; however Plaintiffs ultimately learned that Defendant ROBERT failed and refused to execute the Lease Purchase Agreement for Lot 3 as represented and failed to provide Plaintiffs with the "Lease Purchase Deposit" that was to be immediately refunded to Plaintiffs from their own loan proceeds and monies fronted by Plaintiffs.

33. On October 24, 2005, Defendants made specific representations that the $150,000 option deposit was going to be immediately sent to Plaintiffs and requested clarification as to which Plaintiff was to receive the Option Deposit—thereby representing that Plaintiffs' monies for the Lot 3 purchase would be immediately refunded.

34. Defendant ROBERT further lied to Plaintiffs and informed them that the entire "Lease Option Deposit" would be paid out of the loan proceeds for the Lot 1 Residence at the close of escrow for the Lot 1 Residence, only inducing further reliance and further defrauding Plaintiffs in the Subject Transactions.

35. Defendant ROBERT and each of them at all times represented to Plaintiffs that Defendant ROBERT had full authorization to leaseback the Subject Properties, that Defendant ROBERT had fully executed contracts and agreements to sell and then leaseback the Subject Properties, that Defendant ROBERT were in agreement regarding selling and leasing back of the Subject Properties at all times, that no impediments to sale and leasing back of the Subject Properties existed, that the dimensions and title to the Subject Property was free and clear, that construction of the Subject Residences would be immediately completed by Defendants, that hazards in the transaction existed and that Defendants did this type of transaction all of the time and had never defrauded or deceived another buyer on this type of transaction and that Plaintiffs

as absentee buyers could absolutely trust Defendants to live up to their word on these transactions and to return Plaintiffs' monies to Plaintiffs.

36. On or about October 24, 2005, Defendant ROBERT expressly threatened Plaintiffs that Plaintiffs had to close escrow on the Lot 1 Residence because "the two transactions have been inextricably tied together. . . [and that the failure to complete an obligation related to one of the Subject Properties would be a] default with Phoenix Properties & Development, LLC on both transactions."

37. Defendant ROBERT further represented, promised and contracted that Defendant ROBERT would make the Lease Purchase payments for all residence upon the execution of a Lease Purchase Agreement(s) by Plaintiffs.

38. On October 25, 2005, Defendant ROBERT made a series of further representations and correspondence to Plaintiffs that indicates that "Grace must close on Lot 1 in order for [Defendants] to pay you on Lot 3."

39. Defendant ROBERT further represented, contracted and agreed on October 25, 2005 that "[w]hen Grace closes on Lot 1 and signs the Lease Purchase Agreements for Lots 1 & 3 that Phoenix will be obligated to pay the $150,000 Option Deposit for Lot 3 and Phoenix will be obligated to pay Grace's mortgage payments on both Lot 3 and Lot 1."

40. Defendant ROBERT represented that these monies would be paid immediately to Plaintiffs out of escrowed proceeds and that at no time would Plaintiffs' monies be placed in any position where Defendants could and/or would run with Plaintiffs' monies.

41. Although leery that Defendant ROBERT were in breach on the Lot 3 Residence and had not paid the Option Deposit yet, Plaintiffs completed their obligations and closed escrow on the Lot 1 Residence on or about November 1st, 2005 and awaited the "Lease Purchase Deposits" that were to be immediately refunded to Plaintiffs from their own loan proceeds.

42. Plaintiffs closed on the Lot 3 Residence and Lot 1 Residence based upon representations that the residences were completed, with the exception of minor punchlist work.

43. Upon the close of escrow and receipt of Plaintiffs' monies on the Lot 1 Residence, all communications to or from Defendant ROBERT ceased and halted; Defendant ROBERT disappeared.

44. Defendant ROBERT absconded with Plaintiffs' money and ran away.

45. Upon the close of escrow and receipt of Plaintiffs' monies on the Lot 1 Residence, all construction and completion of the Subject Residences halted, leaving Defendants in breach of their statutory and contractual obligations to complete construction.

46. Approximately eight weeks after the close of escrow on Lot 1, Defendant ROBERT forwarded correspondence to Plaintiffs indicating that Defendant ROBERT were expressly changing their mind, that Defendants never intended to lease the residences and disclosing to Plaintiffs for the first time that Defendant ROBERT were expressly refusing to execute or abide by the Lease Purchase Agreement, throwing Plaintiffs into severe and irreparable financial peril and distress, all in an effort to force Plaintiffs to kowtow.

47. Defendants committed and completed an unfathomable amount and degree of misrepresentations, fraudulent documentation and fraudulent actions in furtherance of defrauding Plaintiffs in the purchase of the Subject Properties.

48. Defendant ROBERT and each of them embezzled Plaintiffs' own monies which were never to be held or released to Defendants.

49. Defendants and each of them misrepresented, misled and defrauded Plaintiff in the execution and fulfillment of the Agreement, including but not limited to misrepresenting their intentions to fulfill the Agreement in good faith, ability to fulfill the contract, their double dealing, problems with financing and leasing back and inducing Plaintiffs to commence performance while

acting with full knowledge aforethought that problems existed with the Subject Property.

50. As a result of Defendants' misrepresentations, Plaintiffs were forced to subject themselves to the jurisdiction of the Eighth Judicial District Court in and for the State of Nevada for a variety of claims including *inter alia* bad faith, conversion/embezzlement, fraud and civil conspiracy as against Defendants.

51. Plaintiffs TAM obtained a Judgment from the Eighth Judicial District Court for the State of Nevada based upon Defendants' illegal and nondischargeable acts on January 26th, 2009 as against Defendants and each of them and found Defendants to have committed fraudulent and oppressive acts as against Plaintiffs.

52. On February 19, 2010 Defendant/Debtor ROBERT filed a Chapter 7 Bankruptcy before this Court as Case 2:10-bk-04269-RTBP.

53. On May 25th, 2010, Plaintiffs TAM filed their Complaint to Determine the Non-Dischargability of the Debts owed by Defendant ROBERT to Plaintiffs TAM pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(6) in Case 2:10-AP-00917-RTBP.

54. On February 5th, 2013, after a trial on the issues, Judgment was entered in favor of Plaintiffs TAM and against *inter alia* Defendant ROBERT in Case 2:10-AP-00917-RTBP determining that the debts owed by Defendant ROBERT to Plaintiffs TAM were and are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

**FIRST CLAIM FOR RELIEF**
**(Misrepresentation Pursuant to 11 U.S.C. § 523(a)(2)(A))**

55. Plaintiffs HALL TAM and GRACE TAM [hereinafter collectively referred to as "Plaintiffs TAM"] repeat and reallege each and every allegation set forth above, and incorporate the same by reference as though fully set forth herein.

56. Based upon the foregoing conduct by Defendant ROBERT toward Plaintiffs TAM,

in the course of the negotiations, commercial transactions and contracting in 2005, Defendant ROBERT and each of them engaged in a pattern of fraudulent and oppressive conduct toward Plaintiffs TAM and made a series of fraudulent representations, including but not limited to the foregoing representations regarding the subject solar systems and other facts relevant to said transactions, all of which are based upon information and belief untrue and which Defendant ROBERT knew or should have known were untrue when made.

57. Defendant ROBERT had the intent and knowledge that his acts, omissions and representations are and were false, fraudulent and intended to induce reliance by Plaintiffs TAM into purchasing the Lot 3 residence and Lot 1 residence.

58. Plaintiffs TAM actually, justifiably and detrimentally relied upon Defendant ROBERT's acts and representations regarding the fulfillment of its legal and contractual duties to Plaintiffs, holding Plaintiffs' monies safe for return to Plaintiffs, that the Lease and/or Option Agreements were already executed, that Plaintiffs' monies would be returned, that Defendant ROBERT were already in a position to proceed with the Lease Buyback program, that it was customary for Defendants to repay Plaintiffs from escrowed monies deposited by Plaintiffs themselves, that Defendants would not take or in any manner utilize Plaintiffs' monies and that such monies were safe, said reliance being the catalyst for the transactions in question and evincing fraud in the inducement in these transactions.

59. As a direct and proximate result of Defendant ROBERT's foregoing pattern and scheme of fraudulent conduct, Plaintiff has suffered and continues to suffer severe and crippling damages, the total amount which is in excess of One Million Two Hundred Thousand Dollars ($1,200,000.00) which the sum in which the Eighth Judicial District Court in and for the State of Nevada entered Judgment as against Defendants.

60. Pursuant to 11 U.S.C. §523(a)(2), said debts are nondischargeable as a debt for

money or property obtained by false pretenses, a false representation, or actual fraud.

61. The Judgment was entered in favor of Plaintiffs TAM and against *inter alia* Defendant ROBERT in Case 2:10-AP-00917-RTBP determining that the debts owed by Defendant ROBERT to Plaintiffs TAM were and are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2) which is entitled to preclusive effect and determination as to the nondischargability of the debts owed to Plaintiffs TAM.

62. As a result of Defendant's fraudulent acts, Plaintiffs TAM have been required to retain the services of an attorney in order to prosecute this action and is entitled to its attorneys' fees and costs for having the prosecute this action.

WHEREFORE, Plaintiffs HALL TAM and GRACE TAM pray for judgment against Debtors ROBERT CLYDE PORTER II as follows:

1. An Order of this Court that the debts owed to Plaintiffs TAM are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) on grounds that Debtor/Defendant ROBERT CLYDE PORTER II engaged in fraudulent acts towards Plaintiffs TAM which has been previously adjudicated to be nondischargable.

DATED this 12th day of November, 2024.

                                       CORY READE DOWS AND SHAFER

                                  By: **/s/** R. Christopher Reade
                                      R. CHRISTOPHER READE, ESQ.
                                      Arizona Bar No. 026091
                                      1333 North Buffalo Drive, Suite 210
                                      Las Vegas, Nevada 89128
                                      Telephone: (702) 794-4411
                                      Facsimile: (702) 794-4421
                                      creade@crdslaw.com
                                      Attorneys for Plaintiffs TAM